# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND, *et al.*,<br>        Plaintiffs<br><br>         v.<br><br>THOMAS J. VILSACK, *et al.*,<br>        Defendants | Civil Action No. 14-1462 (CKK) |

## MEMORANDUM OPINION
(March 14, 2016)

In this case, Plaintiffs Animal Legal Defense Fund, Tracey Kuehl, and Lisa Kuehl challenge the United States Department of Agriculture's 2015 renewal of the license for the operation of the Cricket Hollow Zoo. The Cricket Hollow Zoo is a private zoo in Manchester, Iowa, which includes lions, tigers, bears, baboons, lemurs, dogs, rabbits, and pigs. Plaintiffs claim that the 2015 renewal was unlawful under the Animal Welfare Act, 7 U.S.C. § 2131-59, the federal statute governing such facilities, and that the agency acted in a manner that was arbitrary and capricious, an abuse of discretion, and otherwise unlawful in violation of the Administrative Procedure Act ("APA"). Plaintiffs also claim that the agency's "pattern and practice" of renewing the license for this facility, at times when the facility was in violation of the substantive standards of the Animal Welfare Act, violates both the Animal Welfare Act and the APA.[1] Now before the Court is Defendants' [37] Motion to Dismiss Supplemental Complaint.

Upon consideration of the pleadings,[2] the relevant legal authorities, and the record for purposes of this motion, the Court GRANTS Defendants' [37] Motion to Dismiss Supplemental

---

[1] Plaintiffs originally challenged the 2014 license renewal in this action. In filing their Supplemental Complaint, ECF No. 35, on July 17, 2015, Plaintiffs replaced their challenge to the 2014 renewal with their challenge to the 2015 license renewal.

[2] The Court's consideration has focused on the following documents:

Complaint. Essentially, this case turns on whether the agency's interpretation of the Animal Welfare Act through the regulations that it has issued constitutes a permissible interpretation of the statutory framework. Because the Court concludes that those regulations do constitute a permissible interpretation, and because the licenses were lawfully renewed pursuant to those regulations, Plaintiffs cannot prevail on any of their claims. This case is dismissed in its entirety.

## I. BACKGROUND

For the purposes of the motion before the Court, the Court accepts as true the well-pleaded allegations in Plaintiffs' Supplemental Complaint. The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014). The Court reserves further additional presentation of the background, as necessary, for the discussion of the legal issues below.

### A.  Statutory and Regulatory Framework

Under the Animal Welfare Act, a license is required in order for "dealers" or "exhibitors" to operate.[3] Specifically, under the Act,

---

- Pls.' Supplemental Complaint for Declaratory and Injunctive Relief ("Compl."), ECF No. 35;
- Defs.' Mot. to Dismiss Supplemental Complaint ("Defs.' Mot."), ECF No. 37;
- Pls.' Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n"), ECF No. 38; and
- Defs.' Reply in Supp. of Mot. to Dismiss Supplemental Compl. ("Defs.' Reply"), ECF No. 43.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

[3] Under the statute, a "dealer" is defined as follows:

The term "dealer" means any person who, in commerce, for compensation or profit, delivers for transportation, or transports, except as a carrier, buys, or sells, or negotiates the purchase or sale of, (1) any dog or other animal whether alive or

> [n]o dealer or exhibitor shall sell or offer to sell or transport or offer for transportation, in commerce, to any research facility or for exhibition or for use as a pet any animal, or buy, sell, offer to buy or sell, transport or offer for transportation, in commerce, to or from another dealer or exhibitor under this chapter any animals, *unless and until such dealer or exhibitor shall have obtained a license from the Secretary and such license shall not have been suspended or revoked*.

7 U.S.C.A. § 2134 (emphasis added). Accordingly, the statute authorizes the Secretary of

Agriculture to issue licenses for "dealers" and "exhibitors" under certain conditions:

> The Secretary shall issue licenses to dealers and exhibitors upon application therefor in such form and manner as he may prescribe and upon payment of such fee established pursuant to 2153 of this title: *Provided,* That *no such license shall be issued* until the dealer or exhibitor shall have demonstrated that his facilities comply with the standards promulgated by the Secretary pursuant to section 2143 of this title[.]

7 U.S.C. § 2133 (emphasis added). As referenced in this provision, section 2143 includes various

substantive requirements for the "humane handling, care, treatment, and transportation of

animals." 7 U.S.C. § 2143 (section title).

---

> dead for research, teaching, exhibition, or use as a pet, or (2) any dog for hunting, security, or breeding purposes. Such term does not include a retail pet store (other than a retail pet store which sells any animals to a research facility, an exhibitor, or another dealer).

7 U.S.C. § 2132(g). An "exhibitor" is defined as follows:

> The term "exhibitor" means any person (public or private) exhibiting any animals, which were purchased in commerce or the intended distribution of which affects commerce, or will affect commerce, to the public for compensation, as determined by the Secretary, and such term includes carnivals, circuses, and zoos exhibiting such animals whether operated for profit or not; but such term excludes retail pet stores, an owner of a common, domesticated household pet who derives less than a substantial portion of income from a nonprimary source (as determined by the Secretary) for exhibiting an animal that exclusively resides at the residence of the pet owner, organizations sponsoring and all persons participating in State and country fairs, livestock shows, rodeos, purebred dog and cat shows, and any other fairs or exhibitions intended to advance agricultural arts and sciences, as may be determined by the Secretary

*Id.* § 2132(h).

3

The Animal Welfare Act also includes several provisions directed at enforcement by the agency. *First*, if the Secretary has "reason to believe" that a licensee "has violated or is violating any provision of this chapter, or any of the rules or regulations or standards promulgated by the Secretary hereunder, he may suspend such person's license temporarily, but not to exceed 21 days." *Id.* § 2149(a). *Second*, "after notice and opportunity for hearing," the Secretary "may *suspend* [a license] for such additional period as he may specify, or *revoke* such license, if such violation is determined to have occurred." *Id.* (emphasis added). *Third*, the Secretary may assess civil penalties for violations of the statute. *Id*. § 2149(b). And *fourth*, the statute authorizes criminal penalties for knowing violations of the statutory provisions. *Id.* § 2149(d). Any person subject to an order of the Secretary, including license suspensions, license revocations, and civil penalties, may appeal such an order to the appropriate United States Court of Appeals. *Id.* § 2149(c).

In addition, the statute authorizes the Secretary of Agriculture "to promulgate such rules, regulations, and orders as he may deem necessary in order to effectuate the purposes of" the statute." 7 U.S.C. § 2151. Indeed, "[p]ursuant to this section, USDA has adopted comprehensive renewal regulations that combine purely administrative requirements, random inspections, and discretionary enforcement proceedings." *Animal Legal Defense Fund v. U.S. Dep't of Agric*., 789 F.3d 1206, 1211 (11th Cir. 2015).

In *Animal Legal Defense Fund*, the Eleventh Circuit Court of Appeals cogently described the regulatory requirements for licensing and renewals:

> On or before the expiration date of his or her one-year license, an exhibitor must submit a completed application form to the appropriate USDA regional office fulfilling three, purely administrative criteria. [1] First, the exhibitor certifies by signing the application form that, to the best of her knowledge or belief, she is compliant and will continue to comply with all AWA animal wildlife standards. [2] Second, the exhibitor pays an annual fee calculated according to USDA's fee

schedule that varies according to the number of animals owned, held, or exhibited. [3] Third, the exhibitor submits an annual report detailing the number of animals owned, held, or exhibited. So long as an exhibitor meets these three criteria, even if her facility fails to comply with animal wildlife standards on the license expiration date, USDA must grant her a renewal. ... Otherwise, the license automatically terminates due to expiration.

*Animal Legal Defense Fund*, 789 F.3d at 1211 (citations omitted). The regulations also elaborate on the statutory scheme for enforcement, including provisions for random inspections by USDA officials and a process for suspending or revoking licenses, as well for levying civil penalties. *See id.* at 1212. Notably, any suspension longer than 21 days, license revocations, and civil penalties require notice and a hearing. *Id.*; *see also* 9 C.F.R. § 2.12.

**B. Factual and Procedural Background**

Tom and Pamela Sellner initially obtained a license for the Cricket Hollow Zoo on May 27, 1994. Compl. ¶ 14. The USDA has renewed their license each year since then. *Id.* Plaintiffs allege that the USDA has issued numerous notices of violation with respect to the Zoo, including several associated fines, in the years since 2004. *See id.* ¶¶ 105-119. Plaintiffs further allege that, upon information and belief, the USDA renewed the license in late April 2015 or in May 2015. *Id.* ¶ 125. The Administrative Record reflects that the license is currently set to expire, if not renewed, on May 27, 2016, pursuant to the 2015-2016 license certificate. *See* Pls.' Opp'n, Ex. A at 8 (certified list of contents of administrative record); *id.* at 11 (2015-2016 certificate).

Plaintiffs initially brought this action challenging the 2014 renewal of the Cricket Hollow Zoo license, as well as the alleged pattern and practice of unlawful license renewals. After the Court resolved the parties' disputes regarding the necessity of producing the administrative record at this stage of the proceedings and regarding the scope of the administrative record,[4] the

_____

[4] The details of those disputes are not material to the motion before the Court today.

Court granted leave for Plaintiffs to file a supplemental complaint pursuant to Federal Rule of Civil Procedure 15(d). *See* Minute Order dated July 17, 2015. Defendants' motion to dismiss that supplemental complaint is now before the Court.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. District of Columbia Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted).

## III. DISCUSSION

Plaintiffs claim that the agency's 2015 licensing decision is unlawful under the Animal Welfare Act and, therefore, must be set aside under the APA. Plaintiffs also claim that the decision was arbitrary and capricious and an abuse of discretion. The Court addresses the parties' arguments about the lawfulness of the decision under the Animal Welfare Act, followed by

Plaintiffs' claims that the decision was otherwise arbitrary and capricious or an abuse of discretion. Because the Court concludes that none of Plaintiffs' claims are viable in light of the applicable statutory provisions and the regulations promulgated, the Court need not address the parties' arguments regarding the viability of a "pattern and practice" claim under the APA.

## A.  Lawfulness of the Regulatory Scheme under the Animal Welfare Act

To assess Plaintiffs' claim that the 2015 renewal of the Cricket Hollow Zoo's license must be set aside as unlawful under the APA, *see* 5 U.S.C. § 706(2), the Court must turn to USDA's interpretation of the statutory scheme. The Court applies the framework established in *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984). The Court first asks "whether Congress has directly spoken to the precise question at issue, in which case we must give effect to the unambiguously expressed intent of Congress." *Deppenbrook v. Pension Benefit Guar. Corp*, 778 F.3d 166, 172 (D.C. Cir. 2015) (citation omitted). "If the statute is silent or ambiguous with respect to the specific issue, however, we move to the second step and defer to the agency's interpretation as long as it is based on a permissible construction of the statute." *Id.* "To trigger deference," an agency must show that Congress has " 'delegated authority to the agency generally to make rules carrying the force of law' " and that " 'the agency interpretation claiming deference was promulgated in the exercise of that authority.' " *Fogo De Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec.*, 769 F.3d 1127, 1136 (D.C. Cir. 2014) (quoting *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001)).

The question before the Court is narrow: whether the regulatory scheme pursuant to which the license was issued is lawful under the Animal Welfare Act, not whether Congress has chosen the *best* statutory scheme or whether the agency has implemented that scheme through the *best* set of regulations. *See Ark Initiative v. Tidwell*, No. 14-5259, 2016 WL 874773, at *5

(D.C. Cir. Mar. 8, 2016) ("The question before us is of a type ubiquitous to administrative law: Whether the Colorado rule is permissible under federal law, not whether we believe as a matter of environmental policy it is the best rule, or even a good one."). With that in mind, the Court proceeds to *Chevron*'s two steps.

### 1. *Chevron* Step One

"Under step one, the court must determine 'whether Congress has directly spoken to the precise question at issue.' " *W. Minnesota Mun. Power Agency v. Fed. Energy Regulatory Comm'n*, 806 F.3d 588, 591 (D.C. Cir. 2015) (quoting *Chevron*, 467 U.S. at 842). "If so, then the court and the agency must 'give effect to the unambiguously expressed intent of Congress.' " *Id.* (quoting *Chevron*, 467 U.S. at 842-43). The precise question at issue in this case is whether the agency permissibly renewed the license of the Cricket Hollow Zoo even if, as Plaintiffs allege, the agency knew that the Zoo did not then comply with the substantive standards of the Animal Welfare Act regarding "the human handling, care, treatment, and transportation of animals." 7 U.S.C. § 2143(a).

"In addressing a question of statutory interpretation, the court begins with the text." *W. Minnesota Mun. Power Agency*, 806 F.3d at 591. As presented above, the following provision of the statute governs the issuance of licenses to "dealers" and "exhibitors":

> The Secretary shall issue licenses to dealers and exhibitors upon application therefor in such form and manner as he may prescribe and upon payment of such fee established pursuant to 2153 of this title: *Provided,* That no such license shall be issued until the dealer or exhibitor shall have demonstrated that his facilities comply with the standards promulgated by the Secretary pursuant to section 2143 of this title[.]

7 U.S.C. § 2133.

Plaintiffs argue that the plain language of the statute requires that no license can be issued *or renewed* until the applicant has "demonstrated that his facilities comply with the standards

promulgated by the Secretary." *Id.* As support for their argument, Plaintiffs rely primarily on several dictionary definitions of the relevant statutory language, on other provisions of the statutory scheme, and on their assessment of the agency's implementation of the regulatory scheme. Specifically, Plaintiffs assert that the *renewal* of a license, which is an administrative process that occurs annually under the agency's regulatory scheme, is encompassed within the statutory prohibition on *issuing licenses* until certain requirements are met. Plaintiffs' *Chevron* Step One argument rises or falls with this claim. That is, if license renewal is a type of license issuance, then demonstration of compliance with the statute's substantive requirements would be necessary for license renewal; however, if license renewal is a distinct activity, which is not a type of license issuance, the statute does not require the demonstration of compliance with its substantive standards in order for a license to be renewed.

By contrast, Defendants argue that Congress has not spoken to the question of renewals and that, therefore, this question must be resolved under *Chevron* Step Two. Specifically, Defendants argue that none of Plaintiffs' arguments as to why the statute is *unambiguous* are persuasive. They also argue that the language of the statute, together with the relevant context, mandates the conclusion that Congress has not spoken to the precise question at issue.

Before assessing the parties' specific arguments, the Court notes an elementary proposition. Plaintiffs repeatedly assert in a conclusory fashion that a "renewal license" is a type of license and that *renewing* a license is a form of *issuing* a license. However, those conclusory characterizations are not sufficient to support any legal conclusions regarding renewals. With that in mind, the Court first turns to the text of the statute, followed by the other arguments of the parties.

As described by the Eleventh Circuit Court of Appeals in its consideration of the same issue that is before this Court today, the term "issue" is not defined in the Animal Welfare Act and the term "renew" is not even found within the statute. Looking to a 1976 dictionary because of the relative closeness in time of its publication to the 1966 enactment of the Animal Welfare Act, the Eleventh Circuit Court of Appeals described the term "issue" as follows: "'Issue' is defined, in the sense linguistically relevant to the circumstances here, as 'to come out, go out,' 'to proceed or come forth from a usually specified source,' or 'to cause to appear or become available by officially putting forth or distributing or granting or proclaiming or promulgating.' " *Animal Legal Defense Fund*, 789 F.3d at 1216 (quoting WEBSTER'S NEW INTERNATIONAL DICTIONARY 1201 (3d ed. 1976)). With reference to the same dictionary, the Eleventh Circuit described the term "renew" as follows: " 'Renew' means 'to make new again,' 'to restore to fullness or sufficiency,' or 'to grant or obtain an extension of.' " *Id.* (quoting WEBSTER'S at 1922). The Eleventh Circuit assessed the relationship of these terms as follows:

> Comparing these two definitions, we conclude the plain meaning of "issue" does not necessarily include "renew." Rather than make a license "come out" or "go out," one could "restore to fullness" a license that has already "come out" or "gone out." In fact, that is precisely the type of licensing regime USDA has established under the AWA. USDA makes a license "go out" once an applicant has met the requirements for an issuance. After USDA makes the license go out, it remains "valid and effective" unless the licensee fails to comply with the administrative renewal process. *See* 9 C.F.R. § 2.5(a) (stating a "license issued under this part shall be valid and effective" unless "revoked or suspended pursuant to section 19 of the Act"). No license is given out during the renewal process; instead, the exhibitor maintains the same license number. Based on our analysis of § 2133 standing alone, we cannot conclude Congress has spoken to the precise question at issue.

*Id.* The Court agrees with this assessment: the statutory language does not compel the conclusion that "issue" necessarily includes "renew."

Plaintiffs' reliance on what appears to be the Ninth Edition of Black's Law Dictionary is of no more assistance to their argument. With respect to the term "issue," Plaintiffs cite the

definition "[t]o send out or distribute officially." Pls.' Opp'n at 15 (quoting BLACK'S LAW DICTIONARY 908 (9th Ed. 1990)). Plaintiffs rely on that definition to argue that the agency "issues" a license each time it sends out a piece of paper renewing the license. However, Plaintiffs wholly ignore an additional definition of the term "issue" from that same dictionary: "[t]o be put forth officially." BLACK'S LAW DICTIONARY 908. Indeed, it is that second definition that appears to be a more plausible reading of the statutory text: that *permission* cannot be given for a zoo to operate until an applicant demonstrates compliance with the substantive standards of the act—not that compliance is required before the agency entrusts a piece of paper to the United States Postal Service for delivery. But ultimately which dictionary definition appears to be a closer fit to this Court is of no moment because Plaintiffs cannot generate precision in the statutory text by referencing selected definitions from their own preferred dictionary.[5] Simply put, the statutory text itself never discusses renewals, and the Court concludes that the text does not allow the determination that Congress has spoken to the precise question at issue: whether *renewals* are within the ambit of the statutory reference to the *issuance* of licenses.

The context of the statute also confirms that Congress has not spoken to the precise question at issue. The Court agrees with the Eleventh Circuit Court of Appeals that "[e]xamination of the whole AWA statute strengthens USDA's argument that Congress did not unambiguously require compliance with animal welfare standards on the date of license renewal." *Animal Legal Defense Fund*, 789 F.3d at 1216. The Eleventh Circuit found the

---

[5] Nor is Plaintiffs' reference to the definitional section of the APA persuasive. Under the APA, it is true that a licensing process is defined to include an "agency process respecting the grant, renewal, denial, revocation, suspension, annulment, withdrawal, limitation, amendment, modification, or conditioning of a license." 5 U.S.C. § 551(9). However, that inclusive definition of the term licensing process, for the purpose of subjecting the final outcome of those processes to judicial review, in no way suggests that the "renewal" of a license is wholly encompassed with the "issuance" of a license.

separate enforcement provisions under section 2149 of the statute to be important, as does this

Court. Specifically, that section "spells out the adjudicative process for punishing a licensee, *i.e.*,

one who already holds a license." *Id.* (citation omitted). If the provision of the statute regarding

the issuance of licenses "mandated the revocation of a license whenever USDA thinks the

exhibitor has failed to demonstrate compliance on an anniversary date, the due process

protections afforded to licensees in § 2149 would be mere surplusage." *Id.* (citation omitted). The

Eleventh Circuit further explained why the enforcement provision was inconsistent with the

allegedly clear intent of Congress to include renewals within the scope of the license issuance

provisions:

> To revoke a license, USDA would not need to bring an enforcement proceeding
> against a licensee; the agency could patiently bide its time until the license
> anniversary rolled around, then immediately revoke the license for failure to
> demonstrate compliance. The exhibitor would have no right to a hearing, nor
> would she have a right to appeal the denial of her renewal application. In light of
> the protracted time often necessary to litigate a final agency decision through an
> appeal, USDA would have no reason to initiate any enforcement proceedings
> against licensees. Surely Congress did not enact § 2149 to lull licensees into
> relying on due process protections that do not actually exist.

*Id.* The Court finds this analysis persuasive and concludes that the structure of the Animal

Welfare Act does not *unambiguously* require existing licensees to demonstrate compliance with

the Act's substantive provisions in order for their license to be renewed.[6] Because the Court

concludes that both the text and the context of the statute indicate that the statute does not speak

---

[6] Citing the provision of section 2153 that authorizes the agency to "collect[] reasonable fees for
licenses issued," 7 U.S.C. § 2153, Plaintiffs argue that the fact that agency levies fees on license
renewals suggests that the *agency* understands renewals to be within the scope of license
issuances. Even assuming that the agency's practice could create statutory precision where none
otherwise exists, the Court disagrees. This provision nowhere suggests that the agency can only
levy fees on a licensee at the moment of the issuance of a license. Therefore, to assess fees on a
yearly basis, on the occasion of a license renewal, in no way indicates that a license renewal is in
effect the issuance of a new license.

to the question at issue, the Court sees no need to consult the statute's legislative history in order to determine whether to proceed to *Chevron* Step Two.[7]

Moreover, the remainder of Plaintiffs' *Chevron* Step One arguments do not fare any better. Plaintiffs rely on the decision of the District of Columbia Circuit Court of Appeals in *Natural Resources Defense Council v. EPA*, 777 F.3d 456 (D.C. Cir. 2014), for the proposition that the agency may not eliminate certain statutory requirements. *Id.* at 471. But that case says nothing about whether the Animal Welfare Act speaks precisely to the question at issue in this case. Similarly, the Supreme Court's conclusion in *Massachusetts v. EPA*, 549 U.S. 497 (2007), that the language of the Clear Air Act meant that greenhouse gases were within the scope of that statute is inapposite. That case does not stand for the broad proposition for which Plaintiffs cite it. Rather, the Supreme Court in *Massachusetts v. EPA* conducted a thorough analysis of the particular provisions of that statute and concluded that "[b]ecause greenhouse gases fit well within the Clean Air Act's capacious definition of 'air pollutant,' … EPA has the statutory authority to regulate the emission of such gases from new motor vehicles." *Id.* at 532. The Supreme Court's decision in *Massachusetts v. EPA* provides no basis for the Court to conclude that the Animal Welfare Act *unambiguously* includes renewals within the scope of the requirements governing the issuance of licenses. So too, the D.C. Circuit Court of Appeals' decision in *Western Minnesota Municipal Power Agency v. Federal Energy Regulatory*

---

[7] In their brief, Plaintiffs describe a 1995 statement of Representative George E. Brown, Jr., regarding the scope of the agency's authority to deny renewals. *See* Pls.' Opp'n at 4-5. However, Plaintiffs do not appear to rely on this statement for their *Chevron* argument. In any event, even assuming legislative history can reveal precision in a statute where ambiguity otherwise prevails, the meager history that Plaintiffs proffer is a thin reed on which to stand. Furthermore, the Court notes that it would conclude, as the Eleventh Circuit Court of Appeals did, that the legislative history in fact "confirms [the] conclusion that Congress has not spoken directly to the question of license renewal." *Animal Legal Defense Fund*, 789 F.3d at 1218.

*Commission* is not to the contrary. 806 F.3d at 591. There the Court of Appeals determined that the agency exceeded the scope of its authority in imputing a limitation to a statutory term that was not present in the statutory text. *See id.* at 596. But the agency here, the USDA, has not taken a similar step; instead, it has concluded that the statute does not speak to renewals and that renewals are not an activity encompassed within the meaning of issuing licenses. The *Western Minnesota* case did not raise such an issue. The USDA has not, contrary to Plaintiffs' assertions, isolated a certain subset of license issuances and determined that the statutory requirements simply do not apply to them. Accordingly, *Western Minnesota* is inapposite with respect to the case at hand. Finally, the regulations promulgated by the agency simply do not reveal a fixed meaning to the statute that a straightforward reading of the statutory text, the context, and even the legislative history otherwise fail to divulge.

Having assessed the several arguments of the parties regarding the statute, the Court concludes that, as Defendants argue, Congress has not spoken to the question at issue. Therefore, the Court proceeds to analyze the statutory provisions under *Chevron* Step Two.

### 2. *Chevron* **Step Two**

Under *Chevron* Step Two, the question for the Court is "whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. As with Step One, the Court is once again persuaded by the thorough analysis of the Eleventh Circuit Court of Appeals in *Animal Legal Defense Fund*. "Because Congress has expressly delegated authority to USDA to elucidate the meaning of 7 U.S.C. § 2133 through regulation, those regulations 'are given controlling weight unless arbitrary, capricious, or manifestly contrary to the statute.' " *Animal Legal Defense Fund*, 789 F.3d at 1220 (quoting *Chevron*, 467 U.S. at 843–44). "If USDA's construction of the statute is reasonable in light of the policies committed to its care by

the [Animal Welfare Act], this Court may not substitute its own construction of the statutory

provision." *Id.* (citation omitted). Instead, the Court's "duty is to decide whether USDA's

construction is a reasonable one in light of the statutory scheme." *Id.*; *see also Ark Initiative*,

2016 WL 874773, at *5. Upon review of the parties' arguments, the Court concludes that the

agency's construction is a reasonable one.

    Before considering the reasonableness of the agency's interpretation, the Court addresses

several prefatory arguments. First, Plaintiffs assert that the agency's position does not warrant

deference because it is merely a "post hoc litigation position." *See* Pls.' Opp'n at 23. However,

Plaintiffs do not develop this argument fully and instead gesture towards the briefing before the

Eleventh Circuit in *Animal Legal Defense Fund*. In any event, the Court agrees with the Eleventh

Circuit that the agency's interpretation is not a post-hoc rationalization. *See Animal Legal*

*Defense Fund*, 789 F.3d at 1221-23. Most importantly, "USDA first articulated its license

renewal policy not during this litigation, but in 1967." *Id.* at 1221 (citing Laboratory Animal

Welfare, 32 Fed. Reg. 3720, 3721, §§ 2.4–2.5 (Feb. 24, 1967)). It is in the regulations issued

that year that the agency "set[] independent requirements for license issuance versus renewal."

*Id.* Regardless of any minor discrepancies in the agency's reasoning offered over the years, "this

is not a case where the agency's position is 'wholly unsupported by regulations, rulings, or

administrative practice.' " *Id.* at 1221-22 (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S.

204, 212 (1988)). Accordingly, the "agency's statutory interpretation embodied in notice-and-

comment rulemaking for nearly fifty years" warrants deference. *Id.* at 1222. Furthermore, the

Court concludes, as did the Eleventh Circuit, that the alleged inconsistencies that Plaintiffs

identified in the *Animal Legal Defense Fund* appeal before that court do not detract from the

deference owed to the agency's reasoned and longstanding interpretation. *See id.*

Having established that the agency's interpretation is entitled to deference, the Court proceeds to assess the reasonableness of the agency's interpretation itself. Specifically, the Court considers whether the agency's interpretation of the statute through the regulatory scheme it promulgated is reasonable in light of the fact that the scheme does not condition renewal of a facility license on demonstration of compliance with the standards of the Animal Welfare Act. The Court concludes that it is reasonable.

The administrative renewal process established by the USDA requires a licensee to submit an application for renewal complying with three requirements:

1. Applicant must "certify[y] by signing the application form that, to the best of the applicant's knowledge and belief, he or she is in compliance with the regulations and standards and agrees to continue to comply with the regulations and standards." 9 C.F.R. § 2.2(b).

2. The applicant must pay the annual license fee. *Id.* § 2.2(c).

3. The applicant must submit an annual report to the agency. *Id.* § 2.7. The required contents of the annual report vary by the category of applicants, such as whether the applicant is a "dealer" or an "exhibitor." *See id.*

*See* Rules and Regulations, Department of Agriculture, Animal Welfare; Licensing and Records, 60 Fed. Reg. 13893–01, 13894 (Mar. 15, 1995) (establishing renewal requirements). Unlike the initial application process for a license, the renewal process does not require an applicant to demonstrate compliance with the substantive standards of the Animal Welfare Act. *See Animal Legal Defense Fund*, 789 F.3d at 1223 (citing 9 C.F.R. §§ 2.2(b), 2.3(b)). In addition to the renewal process itself, licensees are subject to random inspections. 9 C.F.R. § 2.3. Finally, as described above, the agency may bring enforcement proceedings against a licensee, through which the agency may seek to suspend or revoke a license or to levy civil penalties. *See* 7 U.S.C § 2149; 9 C.F.R. § 2.5.

The Court concludes, as did the Eleventh Circuit in *Animal Legal Defense Fund*, that the agency's interpretation of the statutory requirements as embodied in this regulatory scheme is permissible. The Eleventh Circuit's analysis is cogent and persuasive and, therefore, worth quoting at some length:

> USDA's construction of the AWA's license renewal process was "a reasonable policy choice for the agency to make." *Chevron,* 467 U.S. at 845. USDA's administrative renewal scheme furthers the AWA's competing goals of promoting animal welfare and affording due process to licensees. Purely administrative renewal keeps USDA's records up-to-date, and then allows the agency to protect animal welfare through random, unannounced inspections. Given its limited resources, USDA could not annually inspect the facilities of every zoo, aquarium or other exhibitor across the country, or initiate license termination proceedings for every violation, no matter how minor. USDA has exercised its "broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities." *See Massachusetts v. EPA,* 549 U.S. 497, 527 (2007). At the same time, the exclusive use of enforcement proceedings to suspend or revoke licenses for noncompliance fosters Congress's intent to protect licensees from arbitrary agency action, as codified at 7 U.S.C. § 2149. USDA's interpretation restrains the agency from using the renewal process as a means to bypass licensees' right to notice, a hearing, and an appeal.

*Animal Legal Def. Fund*, 789 F.3d at 1224 (footnote omitted). This Court agrees that it is reasonable for the agency to establish a two-prong system through the regulations it promulgated under the Animal Welfare Act. That is, after an applicant for a license initially demonstrates compliance with the substantive requirements of the statute, as required by the statute itself, a license can be renewed through a purely administrative process. However, the agency retains the authority to initiate enforcement proceedings, through which licensees are afforded the due process protections required by Congress. *See, e.g.*, 7 U.S.C. § 2149 (establishing notice and hearing requirements). That scheme embodies a reasonable division of tasks, reasonably fulfills the various requirements of the statute, and is based on a permissible construction of the statute.

Plaintiffs submit two primary arguments in response: that the agency's interpretation is contrary to Congressional intent and that the interpretation produces absurd results. The Court

disagrees on both fronts. First, Plaintiffs argue that the regulatory scheme adopted by the agency is contrary to Congress's intent to "insure that animals intended for use in research facilities or for exhibition purposes or for use as pets are provided humane care and treatment." 7 U.S.C. § 2131. Plaintiffs contend that this goal is the sole purpose of the statute and that, therefore, the agency's decision *not* to require licensees to demonstrate compliance with the statute's substantive requirements each time a license is renewed is at odds with the statute's purpose. However, Plaintiffs ignore the fact that an additional goal of the statute is to afford due process to licensees. *See Animal Legal Defense Fund*, 789 F.3d at 1224; *see also* 7 U.S.C. § 2149(a). Accordingly, that the agency chose to accommodate the multiple goals of the statute, including the promotion of animal welfare and the protection of procedural rights afforded to applicants and licensees, is well within the agency's zone of policymaking discretion.[8]

Similarly, the Court rejects Plaintiffs' contention that the regulatory scheme established by the agency engenders absurd results. Plaintiffs claim that it is absurd that the *initial* application for a license would be rejected if an applicant has not demonstrated compliance with the statute's substantive requirements, but that a licensee who no longer complies with the substantive requirements can retain that license indefinitely, as long as that licensee continues to satisfy the requirements of the administrative renewal process and absent an enforcement proceeding. The Court disagrees. That discrepancy simply reflects the agency's reasoned policy choice that, once an applicant has initially demonstrated compliance with the requirements of the statute, as required by the text of the statute, a license is not automatically revoked for

---

[8] For that reason, *Natural Resources Defense Council v. Daley*, 209 F.3d 747 (D.C. Cir. 2000), is inapposite. In that case, unlike the case before this Court, the D.C. Circuit Court of Appeals identified the relevant statute as having a single priority: the prevention of overfishing. *See id.* at 753.

noncompliance. That is, a license is not revoked absent an enforcement proceeding initiated by the agency pursuant to the strictures of the statutory provisions enacted by Congress. To do so is not absurd; rather, it is a reasonable interpretation and implementation of the Congressional scheme. Similarly, it is not absurd that a licensee seeking a renewal would be denied that request absent payment of the renewal fee, but not as a result of noncompliance with the substantive provisions of the statute. Plaintiffs clearly disagree with the agency's choice, but that does not transform the result into an absurd one. Nor does it transform the regulatory scheme into an unreasonable one.

The Court need not, as well as cannot, opine on whether the scheme discussed here is the regulatory scheme the Court itself would establish or whether the agency's policy choices are those that the Court would choose. Doing so is not within the scope of the Court's authority; the Court is only authorized to determine whether the scheme established by the agency is reasonable and is based on a permissible interpretation of the statute. Confronted with the same question facing this Court today, the Eleventh Circuit Court of Appeals concluded as follows: "Tasked by Congress to perform the difficult job of reconciling the inherently conflicting interests of due process and animal welfare, USDA has exercised its expertise to craft a reasonable license renewal scheme based on a permissible construction of the [Animal Welfare Act]." *Animal Legal Defense Fund*, 789 F.3d at 1225. This Court agrees. Because the Court's task is limited under the APA and under the *Chevron* doctrine, the Court need not say any more in order to conclude that the 2015 renewal of the Cricket Hollow Zoo's license was not unlawful with respect to the Animal Welfare Act.

**B.  Whether the Licensing Decision is Arbitrary and Capricious or an Abuse of Discretion**

Plaintiffs also claim that the licensing decision is arbitrary and capricious and an abuse of discretion. However, under the regulatory framework, the agency is afforded no discretion whatsoever in implementing the renewal process. Specifically, the regulations provide that the agency "will renew a license after the applicant certifies by signing the application form that, to the best of the applicant's knowledge and belief, he or she is in compliance with the regulations and standards and agrees to continue to comply with the regulations and standards." 9 C.F.R. § 2.2.[9] Accordingly, because there is no dispute that the applicant satisfied the enumerated administrative criteria with respect to the 2015 renewal of the Cricket Hollow Zoo's license, there is no basis for the Court to conclude that the licensing decision was arbitrary and capricious or an abuse of discretion.

Finally, because Plaintiffs' claims fail with respect to the 2015 licensing decision and because the Court has concluded that the regulatory scheme embodies a permissible interpretation and a reasonable implementation of the statutory scheme, Plaintiffs' "pattern and practice" claim necessarily fails as well. Accordingly, there is no need for the Court to consider the parties' arguments regarding the viability of "pattern and practice" claims under the APA.

*          *          *

In sum, the Court has concluded that, because Congress has not spoken to the precise question at issue, it is necessary to evaluate the agency's regulatory scheme under *Chevron* Step

---

[9] Insofar as the Plaintiffs characterize the regulatory scheme itself differently, the Court "must give substantial deference to an agency's interpretation of its own regulations." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994). "[T]he agency's interpretation must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.' " *Id.* (citations omitted). Here, there is no basis for Plaintiffs to disagree with, or for the Court to deviate from, the agency's interpretation of its own regulations.

Two. Doing so, the Court concludes that the regulatory scheme under which the agency renewed

the license of the Cricket Hollow Zoo embodied a permissible interpretation of the relevant

provisions of Animal Welfare Act. Therefore, the renewal of the Zoo's license in 2015 did not

violate the provisions of the Animal Welfare Act. Moreover, because the regulatory scheme

affords the agency no discretion in renewing a license once an applicant has satisfied the

enumerated criteria under the regulations, the Court concludes that the agency's decision was

neither arbitrary and capricious nor an abuse of discretion. For those same reasons, the Court

concludes that Plaintiffs' "pattern and practice" claim fails as well.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' [37] Motion to Dismiss

Supplemental Complaint. This case is dismissed in its entirety.

An appropriate Order accompanies this Memorandum Opinion.

Dated: March 14, 2016

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge